In re the MARRIAGE of Virgil
L. LUEKEN and Toni S.
Lueken.

Virgil L. Lueken, Appellant/Petitioner,

v.

Toni S. Lueken, Respondent.

No. ED 91086.

Missouri Court of Appeals,
Eastern District,
Division Five.

Oct. 21, 2008.

Craig E. Hellmann, Zachary W. Rennick, Washington, MO, for appellant.

Jonathan L. Downard, Union, MO, for respondents.

KENNETH M. ROMINES, Judge.

### Introduction

This is a domestic relations case. Our inquiry concerns whether the trial court, by entering an amended Qualified Domestic Relations Order ("QDRO"), modified the court's original order of distribution of marital property in violation of RSMo. section 452.330.5 (2000)[1]. We find that by entering the amended QDRO, the trial court improperly modified the dissolution decree. Thus, we reverse and remand with instructions that the trial court enter and maintain an amended QDRO consistent with the language of the dissolution decree.

### Facts and Procedural History

Virgil L. Lueken ("Husband") and Toni S. Lueken ("Wife") were married on 21 November 1970. After almost thirty years of marriage, Husband and Wife separated on or about 8 January 1999. On 7 February 2000, the trial court entered a Judgment and Decree of Legal Separation, in which Husband and Wife stipulated that "Wife shall receive 50% of Husband's pension/retirement value as of 12/7/1999." Thereafter, the trial court entered an amended Qualified Domestic Relations Order ("QDRO"). On 23 May 2001, the trial court entered a Judgment converting the decree of separation into a Judgment of Dissolution of Marriage ("dissolution decree"). On 29 May 2001, the court set aside the amended QDRO.

Thereafter, six more amended QDRO's were entered, making seven amended QDROs in total.[2] The seventh amended QDRO allowed increased benefits to Wife if Husband elected an early retirement package or if the plan paid a cost-of-living increase or any other postretirement benefit increase. Husband appeals the entering of the seventh amended QDRO to this court, arguing that the trial court improperly entered the QDRO, in that the order granted Wife additional benefits from Husband's retirement plan contrary to the express language in the couple's dissolution decree.

### Standard of Review

The sole issue before this Court is whether, by way of the seventh amended QDRO, the trial court modified the court's original dissolution decree in violation of section 452.330.5. As in any court-tried case, we will affirm the trial court's judgment unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Interpretation of the parties' settlement agreement and QDRO language is an issue of law, which we review *de novo*. *See Eveland v. Eveland*, 156 S.W.3d 366, 369 (Mo.App. E.D.2004); *Wood v. Wood*, 2 S.W.3d 134, 138 (Mo.App. S.D.1999).

### Discussion

Husband argues that the trial court's entering of the seventh amended QDRO violated section 452.330, in that the

---

1. All statutory references are to RSMo. (2000).

2. Husband claims in his brief that only the third amended QDRO was approved by Husband's employer, DaimlerChrysler. This claim is not supported by the record as we find no evidence showing which, if any, QDRO's were approved by DaimlerChrysler.

QDRO granted Wife increased benefits contrary to the language of the original dissolution decree. Under Missouri law, once a decree or judgment for dissolution of marriage becomes final, the property provisions of the decree generally are not modifiable. *Ochoa v. Ochoa,* 71 S.W.3d 593, 595 (Mo. banc 2002); RSMo. section 452.330.5. The trial court may modify an order "intended to be" a QDRO only for one of the following purposes: (1) to establish or maintain the QDRO's status as "qualified" under a particular plan, or (2) to conform its terms to effectuate the intent of the court's order regarding distribution of property. *See* section 452.330.5. We find that the seventh amended QDRO modified the dissolution decree in violation of section 452.330.5 and that neither exception justifies the entering of the QDRO.

To begin our analysis, we first look to the language of the two documents. The language in the Judgment and Decree of Legal Separation, which was incorporated into the dissolution decree, states that, "Wife shall receive 50% of Husband's pension/retirement value as of 12/7/1999." The language in the seventh amended QDRO states:

"If the participant [Husband] retires prior to his/her normal retirement date and receives subsidized early retirement pension benefits from the Plan, then after the participant's retirement, the amount of the alternate payee's [Wife] benefit payments . . . [w]ill be increased by a share of the early retirement subsidies, in the proportion specified above in this paragraph 6.A."

The seventh amended QDRO further states:

"If the Plan pays a cost-of-living increase or any other post-retirement benefit increase to the participant, the amount of the alternate payee's benefit payments . . . [w]ill be increased by a share of such post-retirement benefit increase, in the proportion specified above in this paragraph 6.A."

It is clear from the plain and ordinary meaning of the language that the seventh amended QDRO modifies the language in the dissolution decree. In paragraph 4 of the dissolution decree, the parties stipulate that "Wife shall receive 50% of Husband's pension/retirement value as of 12/7/1999." Conversely, the language in the seventh amended QDRO grants Wife additional benefits that would accrue after 12/7/1999, namely, subsidized early retirement benefits and any other post-retirement benefit increase. These changes would give wife additional benefits not agreed to in the dissolution decree. This modifies the original dissolution decree in violation of section 452.330.5.

Having recognized this modification, we note that section 452.330.5 gives the circuit court authority to modify "orders intended to be qualified domestic relations orders affecting pension[s] [ . . . ] only for the purpose of establishing or maintaining the order as a qualified domestic relations order or to revise or conform its terms so as to effectuate the expressed intent of the order." Neither of these exceptions applies here.

Regarding the first exception, neither party argues that the trial court entered the seventh amended QDRO for the purpose of establishing or maintaining the order as a QDRO, nor is there any evidence in the record suggesting the trial court entered the seventh QDRO for this purpose. Thus, the first exception does not apply.

We thus turn to the second exception to consider whether the trial court entered the seventh amended QDRO in order to "effectuate the expressed intent of the order." *See* section 452.330.5. To do this,

we look to the original order to determine the express intent of the parties.

 Under Missouri law, normal rules of contract construction apply to interpretation of settlement agreements. *Blackman v. Blackman,* 767 S.W.2d 54, 59 (Mo.App. W.D.1989) (citing *Press Machinery Corp. v. Smith R.P.M. Corp.,* 727 F.2d 781, 784 (8th Cir.1984)). Crucial to the construction of the settlement agreement is the intent of the parties. *Id.* Whether a contract is ambiguous, is a question of law. *Id.* In determining whether a contract is ambiguous, the court must consider the whole instrument and the natural and ordinary meaning of the language. *Id.* The mere fact that the parties disagree on the subject does not render the document itself ambiguous. *Enyeart v. Shelter Mut. Ins. Co.,* 693 S.W.2d 120, 123 (Mo.App. W.D.1985). The test is whether the disputed language, in the context of the entire agreement, is reasonably susceptible of more than one construction giving the words their plain and ordinary meaning as understood by a reasonable, average person. *Id.* The court's role is to determine the intention as manifested not by what the parties now say they intended, but by the document. *Press Machinery Corp.,* 727 F.2d at 784. If the court determines that there is no ambiguity, then the intention of the parties and interpretation of the contract is for the court to determine, as garnered from the four corners of the document. *Id.* Where the contract is ambiguous, use of extrinsic evidence for interpretation is proper. *Id.*

Husband argues that the use of a precise, pre-retirement valuation date indicates that a specific dollar amount was contemplated by the parties and the trial court-a dollar amount ascertainable as of 7 December 1999—and that there is no other language in the decree indicating the parties' intent for Wife to receive more than 50% of Husband's pension, valued as of 7 December 1999. Wife disagrees, arguing that had the parties and the court intended a definite dollar amount they would have calculated and stated that dollar amount in the decree. Wife contends that the court instead used the date of 7 December 1999, not as a date of valuation, but rather as a reference point to use in determining a percentage relationship between the value of the pension in 1999[3] and the value of the whole benefit. Both parties cite to cases in support of their respective arguments; nevertheless, the cases are factually distinguishable from the present case.[4] Fortunately, the inapplicability of these cases does not hamper our analysis, as the application of the law to the facts in the present case is sufficiently straightforward as to allow this court to evaluate the case on its own merits.

Our review of the divorce decree leads us to conclude that the document is unambiguous. The parties stipulate that "Wife shall receive 50% of Husband's pension/retirement value as of 12/7/1999." This language is reasonably susceptible to only one interpretation-that Wife is to receive 50% of Husband's pension/retirement, the value of which to be determined and calculated as of 7 December 1999. We find no other language in the document suggesting Wife's share include any other benefits acquired on the plan after 7 December 1999. We recognize that the now almost standard approach to division of pension benefits is to extend a percentage of the whole value of the pension to the spouse.

---

3. In her brief, Wife states "1997." We believe this to be a clerical error and that Wife intended to state "1999."

4. Husband cites *Riener v. Riener,* 926 S.W.2d 6 (Mo.App. E.D.1996), and Wife cites *Ward v. Ward,* 34 S.W.3d 288 (Mo.App. W.D.2000).

*Ward v. Ward*, 34 S.W.3d 288, 292 (Mo. App. W.D.2000). Nevertheless, the parties must agree to such an arrangement. This was not the case here. The intent of the parties, as clearly expressed in the dissolution decree, was for Wife's share of Husband's pension/retirement to be determined and calculated as of 12/7/1999. The second exception does not apply.

### Conclusion

In entering the seventh amended QDRO, the trial court modified the language of the court's original dissolution decree in violation of RSMo. section 452.330.5. Neither of the two exceptions for modifying an order intended to by a QDRO under section 452.330.5 apply. We accordingly reverse and remand with instructions that the trial court enter and maintain an amended QDRO consistent with the language of the dissolution decree.

REVERSED AND REMANDED.

NANNETTE A. BAKER, C.J., and SHERRI B. SULLIVAN, J. concur.

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.