Stephen J. WILSON, Appellant,

v.

Cathy Jo (Wilson) LILLESTON, Respondent.

No. WD 69788.

Missouri Court of Appeals, Western District.

June 30, 2009.

Ray E. Sousley, for Appellant.

Nancy A. Garris, for Respondent.

Before Division One: JAMES E. WELSH, P.J., VICTOR C. HOWARD, Judge and ALOK AHUJA, Judge.

VICTOR C. HOWARD, Judge.

Stephen Wilson appeals from the judgment nunc pro tunc of the trial court denying his motion to modify a qualified domestic relations order (QDRO) entered on October 7, 2002, and correcting the original July 10, 1996 judgment and decree of dissolution of marriage of the parties. He contends that the QDRO did not conform to the dissolution decree in that it provided for valuation of his retirement account as of his retirement date rather than as of the date of dissolution hearing. The judgment of the trial court is reversed, and the case is remanded with directions.

## Facts

Stephen Wilson (Husband) and Cathy Jo (Wilson) Lilleston (Wife) were married in July 1977. At the time of the marriage, Husband was employed at the United States Postal Service. The parties separated in November 1994. Husband filed a petition for dissolution of marriage in January 1995, and Wife filed an answer and cross petition in February 1995. The matter was set for trial on June 5, 1996.

Before trial, the parties negotiated a separation and property settlement agreement. The settlement agreement included a hand-written addendum executed by the parties concerning Husband's retirement and survivor benefits through the Civil Service Retirement System based upon his employment with the United States Postal Service. The agreement provided, in pertinent part:

The parties agree that the Wife is entitled to 34.6% of the [H]usband's pension and/or retirement benefits with the U.S. Postal Service. Husband will be eligible

for retirement benefits under the Civil Service Retirement System based upon employment with the United States Government. Wife is entitled to 34.6% percent [sic] of husband's gross monthly annuity under the Civil Service Retirement System. The U.S. Office of Personnel Management is directed to pay Wife's share directly to Wife. The U.S. Office of Personnel Management is directed to determine the amount of Wife's share on the date when the employee retires.

The parties presented their property settlement agreement to the court at the dissolution hearing on June 5, 1996. In its judgment and decree of dissolution of marriage entered on July 10, 1996, the court found the agreement to be not unconscionable and that it fully and fairly divided the marital property and debts in an equitable manner. It also incorporated the agreement into the judgment. The dissolution court also made the following finding regarding Husband's retirement benefits:

> That the parties have agreed that [Wife] is entitled to Thirty-four and six-tenths percent (34.6%) of the value of [Husband's] retirement benefits with the United States Postal Service under the Civil Servie [sic] Retirement System accrued as of June 5, 1996.

The court further ordered that Husband's retirement plan with the United States Postal Service shall be divided between the parties pursuant to a QDRO and that it retains continuing jurisdiction over the matter for the sole purpose of adjudicating any issue with respect to the qualification and implementation of the QDRO. Neither party appealed the dissolution decree. Husband continued his employment with the Postal Service until his retirement in approximately 2007, having accumulated a total of thirty-seven years, one month of service.

At some point, a QDRO was prepared and signed by Wife's attorney and placed in the trial court file. It was not, however, signed by Husband's attorney and was not filed. On November 15, 1997, Wife sent a letter to the dissolution court asking for assistance with getting the QDRO entered. On December 10, 1997, Husband's attorney sent a fax to the clerk of the court explaining that the QDRO was inaccurate, she would not sign it, and she advised Wife's attorney of the same in a letter dated October 31, 1997, with suggestions for changes to the QDRO.

In the meantime, several motions to modify were filed and adjudicated between December 1996 and August 2000 before a new judge. The QDRO apparently remained in the court file but was never entered. Then, in September 2002, Wife's new attorney sent a letter to the trial court, with a copy to Husband's attorney, requesting the court to sign the QDRO contained in the court file that was prepared by Wife's former attorney. The trial court entered the QDRO on October 7, 2002. The QDRO contained language substantially similar to that in the parties' settlement agreement, which was incorporated into the dissolution decree. Specifically, it provided that Wife is entitled to 34.6 percent of Husband's retirement benefits with the United States Postal Service and that "[t]he U.S. Office of Personnel Management is directed to determine the amount of [Wife's] share on the date when the employee retires." The additional language in the dissolution decree "accrued as of June 5, 1996" was not included in the QDRO.

In July 2007, Husband filed a motion requesting the court to modify the QDRO to include the June 5, 1996 valuation date language from the dissolution decree. The trial court denied Husband's motion.

In November 2007, Husband filed a motion for order nunc pro tunc requesting that the trial court make the QDRO, record, and judgment clear regarding the June 5, 1996 accrual date. Wife filed her suggestions in opposition of the motion arguing that the QDRO conforms to the parties' separation agreement incorporated into the dissolution decree, which calculates the value of her share of Husband's retirement benefits as of the date of his retirement.

The trial court entered its judgment nunc pro tunc finding that it was the intent of the parties that the valuation of Wife's share of Husband's retirement benefits was to be as of the date Husband retires, the QDRO entered in 2002 is consistent with the parties' separation agreement incorporated into the dissolution decree, and the court's finding in the dissolution decree regarding the June 5, 1996 accrual date does not reflect the separation agreement and is, in fact, a clerical error. Accordingly, the trial court denied Husband's motion to modify the QDRO and ordered that the dissolution decree is corrected to remove the language "accrued as of June 5, 1996" and adding the language "accrued as of the date when [Husband] retires."

This appeal by Husband followed.

## Standard of Review

The judgment of the trial court will be affirmed unless no substantial evidence supports it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Bradley v. Bradley*, 194 S.W.3d 902, 906 (Mo.App. W.D.2006). The appellate court views the evidence and reasonable inferences therefrom in the light most favorable to the judgment and disregards all contrary evidence and inferences. *Bradley*, 194 S.W.3d at 906.

## Discussion

In his sole point on appeal, Husband contends that the trial court erred in not modifying the QDRO because the QDRO did not conform to the dissolution decree, which provided for valuation of Wife's share of his retirement account as of the date of the dissolution hearing, June 5, 1996. Generally, a decree or judgment for dissolution of marriage distributing marital property is final and not modifiable. § 452.330.5, RSMo 2000 ("The court's order as it affects distribution of marital property shall be a final order not subject to modification. . . ."); § 452.360.2, RSMo 2000 ("The court's judgment of dissolution of marriage or legal separation as it affects distribution of marital property shall be a final judgment not subject to modification."); *Ochoa v. Ochoa*, 71 S.W.3d 593, 595 (Mo. banc 2002); *In re Marriage of Lueken*, 267 S.W.3d 800, 802 (Mo.App. E.D.2008). A trial court may, however, modify an order intended to be a QDRO in limited circumstances—to establish or maintain the order as qualified under a particular plan or to revise or conform its terms to effectuate the expressed intent of the court's order regarding distribution of property or, in the case of a property settlement, the parties' intent. § 452.330.5; *Ochoa*, 71 S.W.3d at 595; *Lueken*, 267 S.W.3d at 802; *Wells v. Wells*, 998 S.W.2d 165, 168 (Mo.App. W.D.1999); *Seal v. Raw*, 954 S.W.2d 681, 685 (Mo.App. W.D.1997). The statute contains no time limits or restrictions for modification. *Ochoa*, 71 S.W.3d at 596–97; *Wells*, 998 S.W.2d at 168.

In his motion for order nunc pro tunc, Husband effectively sought modification of the QDRO, alleging that it did not conform to the decree of dissolution, specifically, that the QDRO did not contain the June 5, 1996 accrual date language

found in the decree of dissolution. The trial court denied Husband's request for modification but, instead, entered a judgment nunc pro tunc "correcting" the July 10, 1996 decree of dissolution to remove the language "accrued as of June 5, 1996" and to add the language "accrued as of the date when [Husband] retires." The trial court reasoned that it was the intent of the parties that the valuation of Wife's share of Husband's retirement benefits was to be as of the date Husband retires and the court's finding in the dissolution decree regarding the June 5, 1996 accrual date did not reflect the separation agreement. In arguing in this appeal that the trial court properly entered its judgment nunc pro tunc, Wife states that the settlement agreement was found to be not unconscionable and the dissolution decree did not conform to the agreement of the parties.

"Rule 74.06(a) codifies the common law concept of *nunc pro tunc* judgments...." *McMilian v. McMilian*, 215 S.W.3d 313, 319 (Mo.App. W.D.2007). It provides, "Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders." Rule 74.06(a). The power to enter a nunc pro tunc is derived from a court's jurisdiction over its records, which exists independently from its jurisdiction over its cause or judgment. *Pirtle v. Cook*, 956 S.W.2d 235, 240 (Mo. banc 1997). Such power over its records exists so that the court can cause its records to represent accurately what occurred previously. *Id.* "This power is one to enter nunc pro tunc (now for then) an accurate record entry of a judgment previously rendered." *Id.* "The power to issue nunc pro tunc orders, however, constitutes no more than the power to make the record conform to the judgment already rendered; it cannot change the judgment it-

self." *Id.* " '[T]he only true function of a nunc pro tunc order is to correct some error or inadvertence in the recording of that which was *actually done*, but which, because of that error or omission was not properly recorded....' " *Id.* (quoting *City of Ferguson v. Nelson*, 438 S.W.2d 249, 253 (Mo.1969)). A nunc pro tunc order may not be used to order " 'that which was *not* actually done, or to change or modify the action which was taken.' " *Id.* (quoting *Nelson*, 438 S.W.2d at 253). " 'It is improper to use a nunc pro tunc order to correct judicial inadvertence, omission, oversight or error, or to show what the court might or should have done as distinguished from what it actually did, or to conform to what the court intended to do but did not do.' " *McMilian*, 215 S.W.3d at 320 (quoting *Javier v. Javier*, 955 S.W.2d 224, 225–26 (Mo.App. E.D.1997)). A nunc pro tunc order may not alter or amend the rendered judgment. *Pirtle*, 956 S.W.2d at 241. It may only correct a clerical error that is discernable from the record. *Id.* at 243.

The dissolution decree contained an express finding by the trial court that Wife was entitled to 34.6 percent of Husband's retirement benefits *accrued as of June 5, 1996*. This express finding was not a mere clerical error in the recording of the judgment but a significant provision in the division of Husband's retirement benefits. The June 5, 1996 language constituted a limit to Wife's share of Husband's retirement benefits. The trial court's removal of that language from the dissolution decree by judgment nunc pro tunc did not correct a mere clerical error but inappropriately modified the decree. Even if the June 5, 1996 language was the result of judicial inadvertence, oversight, or error, a nunc pro tunc order was not proper. The dissolution decree dividing the parties' marital property was final in 1996 and not modifiable under sections 452.330.5 and 452.360.2. Wife did not appeal the dissolu-

tion decree or, specifically, the court's finding regarding the June 5, 1996 cut-off date. Wife's argument regarding the intent of the parties in entering their settlement agreement and the trial court's review of the dissolution decree to determine whether it reflected the parties' agreement and the evidence were improper at this stage of the proceedings. Similarly, this court will not now review the propriety of the twelve-year-old dissolution decree. The trial court erred in entering the judgment nunc pro tunc.

The next question is whether the QDRO should have been modified to conform its terms to effectuate the expressed intent of the dissolution decree. "Interpretation of the meaning of a trial court's judgment is a question of law." *Janes v. Janes*, 242 S.W.3d 744, 748 (Mo. App. W.D.2007)(internal quotes and citation omitted). "The words and clauses used in the judgment are to be construed according to their natural and legal import." *Id.* (internal quotes and citation omitted). "When interpreting a judgment, [the appellate] court examines the language of the judgment in its entirety and determines the intention of the trial court from all parts of the judgment." *Id.* (internal quotes and citation omitted). Where the judgment's language is plain and unambiguous, the appellate court does not look outside its four corners for its interpretation. *Id.*

The parties' stipulated in their settlement agreement that "[t]he U.S. Office of Personnel Management *is directed to determine the amount of wife's share on the date when the employee retires.*" (Emphasis added.) The dissolution court incorporated this agreement into the dissolution decree. The court further found that "the parties have agreed that [Wife] is entitled to Thirty-four and six/tenths percent (34.6%) of the value of [Husband's] retirement benefits with the United States Post-

al Service under the Civil Servie [sic] Retirement System *accrued as of June 5, 1996.*" (Emphasis added.) The language in the settlement agreement and the additional finding in the decree were not necessarily inconsistent. Reading the decree in its entirety, the language in parties' agreement concerned the time when the Office of Personnel Management actually determines Wife's share of the retirement benefits, while the additional finding in the decree limited Wife's share of the retirement benefits. The settlement agreement did not suggest that Wife was extended a percentage of the whole value of Husband's retirement benefits. While such approach to the division of retirement benefits is now almost standard, *see Lueken*, 267 S.W.3d at 803–04; *Ward v. Ward*, 34 S.W.3d 288, 292 (Mo.App. W.D.2000), such was not done in this case. *See Lueken*, 267 S.W.3d at 803–804 (recognizing standard approach to division of pension benefits but stating that parties must agree to such arrangement). To the contrary, the unambiguous dissolution decree specifically limited Wife's share of Husband's retirement benefits to 34.6 percent of the benefits accrued as of June 5, 1996. The QDRO entered in 2002 contained only the language from the parties' agreement. It did not include the "accrued as of June 5, 1996" language. Its terms, therefore, did not conform to the unambiguous, expressed intent of the dissolution court's decree regarding distribution of property. The judgment nunc pro tunc is, therefore, reversed, and the case is remanded with instructions that the trial court enter and maintain an amended QDRO consistent with the language of the dissolution decree.

All concur.