

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| TRUDY A. ZAHN, | ) | ED99950 & ED99951 |
| | ) | |
| Appellant/Cross-Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | 10SL-DR07839 |
| | ) | |
| CHARLES W. ZAHN, | ) | Honorable Joseph L. Walsh III |
| | ) | |
| Respondent/Cross-Appellant. | ) | Filed: February 18, 2014 |

## Introduction

Trudy A. Zahn (Wife) appeals the trial court's grant of summary judgment in favor of Charles W. Zahn (Husband) in her suit for division of undisclosed assets following their dissolution of marriage. Wife contends the trial court erred in granting summary judgment, because there remained disputed issues of material fact and the court misapplied the law. She further contends the trial court erred in awarding Husband attorney fees. Husband cross-appeals, arguing the trial court erred in denying his motion to reimburse maintenance payments made to Wife. We affirm in part and reverse and remand in part.

## Background and Procedure

Husband and Wife were married in 1978. Two children were born of the marriage but were emancipated by the time of the dissolution. Wife filed a Petition for

Dissolution of Marriage in 2010. The parties reached a settlement (settlement agreement) in their dissolution in December of 2011, which provided that Husband would pay maintenance to Wife in the amount of $1,850 per month. Husband's maintenance obligation would terminate upon Husband's retirement from Ameren, at which point Husband and Wife would each receive a portion of Husband's pension benefits. The settlement agreement further provided that "[a]ny pension payments made to [Wife] within 30 days of the last maintenance payment shall be reimbursed to [Husband] on a prorated basis of $61.67 per day."

The settlement agreement stated that the parties "warrant[ed] that they ha[d] each disclosed to the other the full extent of their respective properties and income" and that "in the negotiations and finalization of this agreement and acts and transactions referred to herein, each has made an independent investigation concerning the nature, extent and value of the real and personal property of the parties." Husband signed the settlement agreement on December 8, 2011, and Wife signed it on December 15. In addition, Husband and Wife each signed an affidavit for judgment on December 27 and December 15, respectively, attesting the information contained in the attached judgment was true and accurate. The trial court entered judgment pursuant to the settlement agreement on December 29, 2011.

Husband retired on January 1, 2012. He filed a motion for the trial court to approve a Qualified Domestic Relations Order (QDRO) assigning Wife 40.14 percent of Husband's pension. After a hearing on April 17, 2012, the trial court issued an order, apparently based on an oral motion made at the hearing, ordering that the difference between what Wife received in maintenance and what she would be receiving from

2

Ameren in pension payments be calculated, possibly resulting in a reimbursement to Husband. Wife moved to set aside the order, arguing, *inter alia*, she had received no notice of Husband's oral motion and the order conflicted with the language of the settlement agreement. The trial court granted her motion but was silent regarding the basis for its decision. As well, the court approved Husband's QDRO.

Wife filed a motion to divide undisclosed assets, asserting Husband failed to disclose a severance package (severance) valued at $73,153.08 that he knew he would receive from Ameren for his voluntary early retirement. She argued the severance constituted compensation for past services and thus was marital property subject to division by the trial court. Wife filed a motion for summary judgment, which the court denied. Husband then filed a motion for summary judgment, asserting the offer to sever employment was, first, revocable by Ameren until Husband actually retired on January 1, 2012, and thus merely an expectancy and not divisible; and, second, was compensation for future lost earnings and thus his separate property. The trial court granted summary judgment to Husband. Pursuant to the terms of the settlement agreement, the court granted Husband attorney fees in the amount of $6,278.54.

As well, Husband filed a motion to determine amounts due, asserting that under the terms of the settlement agreement, Wife could receive either maintenance from Husband or pension payments under the QDRO. Husband paid Wife $1,850 per month from January through October of 2012, during which time she was entitled to receive— but was not yet receiving—pension payments. On November 1, 2012, she received a lump-sum check for the January-November pension payments. Husband argued he was entitled to reimbursement of the maintenance payments he had paid Wife, namely,

3

$18,500. Wife responded that under the terms of the settlement agreement, Husband could only be reimbursed for any pension payments made within 30 days of the last maintenance payment. The trial court denied Husband's motion. This appeal follows.

## Standard of Review

Summary judgment is appropriate where the moving party demonstrates a right to judgment as a matter of law based on facts about which there is no genuine issue of material fact. ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). The movant has the burden to establish both a legal right to judgment and the absence of any genuine issue of material fact supporting that claimed right to judgment. Id. at 378. A defending party may establish a right to summary judgment as a matter of law by showing: (1) facts that negate any one of the elements of claimant's cause of action; (2) the claimant, after an adequate discovery period, has not and will not be able to produce evidence sufficient to allow the trier of fact to prove the elements of its claims; and (3) there is no genuine dispute as to the existence of each of the facts necessary to support the movant's affirmative defense. Meramec Valley R-III Sch. Dist. v. City of Eureka, 281 S.W.3d 827, 835 (Mo. App. E.D. 2009).

Our review is essentially *de novo*. Cardinal Partners, L.L.C. v. Desco Inv. Co., 301 S.W.3d 104, 108 (Mo. App. E.D. 2010). When considering an appeal from summary judgment, we review the record in a light most favorable to the party against whom judgment was entered, and we afford the non-movant the benefit of all reasonable inferences from the record. Id. at 108-09. In opposing summary judgment, the non-moving party may not rely on mere allegations and denials, but must use affidavits,

4

depositions, answers to interrogatories, or admissions on file to demonstrate the existence of a genuine issue for trial. Meramec Valley R-III Sch. Dist., 281 S.W.3d at 835.

## Discussion

In her three points on appeal, Wife argues the trial court erred in, first, granting summary judgment to Husband, because a genuine issue of material fact existed as to whether his severance from Ameren vested before the dissolution of marriage was final and thus he had a duty to disclose it; second, finding that the severance replaced future wages rather than past wages; and, third, granting Husband attorney fees and costs, because summary judgment was inappropriate. Because the second point is dispositive, we begin our analysis there.

## Point II

In her second point on appeal, Wife argues the trial court erred in granting summary judgment to Husband, because it misapplied the law when it found Husband's severance from Ameren replaced future wages. She contends instead, that if the right to the severance is established during the marriage and the party's termination occurs during the marriage, then the severance may in fact be marital property. Wife's argument fails.

To determine whether severance pay should be classified as marital or non-marital property, Missouri uses a replacement analysis, which looks at what the challenged benefit is meant to replace. Schubert v. Schubert, 366 S.W.3d 55, 70 (Mo. App. E.D. 2012). "[T]he touchstone of the classification is whether severance pay was intended to compensate the employee for efforts made during the marriage or to replace post-separation earnings." Id. at 70-71 (quoting Brill v. Brill, 65 S.W.3d 583, 586 (Mo. App. S.D. 2002) (citation omitted)). If the payment was intended to substitute for lost

5

future earnings, or earnings that would occur post-dissolution, then the payment is non-marital property. Id. at 71.

Here, the record supports a finding that the severance was intended to replace future wages. Ameren's Voluntary Separation offer stated that Ameren was "tightening its belt," and in a "proactive measure to ... reduce costs" was offering its employees over the age of 58 a lump-sum payment, depending on years of service, to take early retirement. Ameren's normal employee retirement date was the first day of the month following the employee's 65th birthday. Under the severance plan, employees would receive the lump-sum payment after their last day of employment, and the lump-sum would not count as earnings for pension purposes. Employees were granted a seven-day period in which to revoke the agreement after submitting it, and Ameren reserved the right to amend, suspend or terminate its severance plan at any time without notice up until the employee retired.

The replacement analysis is inherently decided on a case-by-case basis, depending on the facts of the case. See e.g. Brill, 65 S.W.3d at 586. Looking at the language of Ameren's severance offer, it is clear that the severance here was intended to replace future wages, not past wages earned during the marriage. In exchange for retiring early and losing any benefits that would have accrued until he turned 65, Husband received a lump-sum payment. The stated intent of Ameren's severance offer was to save the company money in the future by reducing the benefits paid to employees. Although the value of the severance was calculated according to the number of years Husband had worked at Ameren, his severance was not compensating him for past services he had performed at Ameren during the time of his marriage. Moreover, Husband did not in fact

6

retire or receive the severance until after the dissolution, and Ameren reserved the right to cancel the severance offer up until the date of Husband's retirement date.

Thus, the severance Husband received was not marital property and was not divisible. Id. at 587 (severance pay replacing lost earnings in future is nonmarital). The trial court did not err in granting summary judgment to Husband.

Point two on appeal is denied.

## Wife's Remaining Points

Because we have determined the severance payment was Husband's separate property and not divisible, Wife's argument raised in Point I that Husband had a duty to disclose Ameren's vested severance offer, even if true,[1] does not create a basis for reversal and we will not address it. Likewise, Wife's argument in Point III that trial court erred in awarding Husband attorney fees fails. Wife agrees that the settlement agreement provided for attorney fees for the prevailing party in the event that any of the provisions in the settlement agreement became the subject of enforcement proceedings. Husband was the prevailing party and thus entitled to attorney fees under the terms of the settlement agreement.

Points one and three on appeal are denied.

## Husband's Cross-Appeal

In his sole point on his cross-appeal, Husband argues the trial court erred in denying his motion to determine amounts due under the settlement agreement. He contends the settlement agreement provided for either maintenance payments or pension

---

[1] Because the trial court either divides marital property based in part on the value of the nonmarital property set apart to each spouse, Section 452.330.1(3), or determines the conscionability of a separation agreement based on the economic circumstances of the parties, Section 452.325.2, the parties have a duty to disclose their separate property. Pursuant to this duty, Husband here should have updated his statement of property to include the known nonmarital severance from Ameren.

7

payments, and by failing to credit the excess maintenance paid by Husband, the court failed to enforce the plain language of the settlement agreement. We agree.

We review *de novo* a trial court's interpretation of a settlement agreement, enforcing the plain language of the agreement. In re Marriage of Busch, 310 S.W.3d 253, 261 (Mo. App. E.D. 2010); see also Leathers v Metalcraft Mfg. & Sales Corp., 240 S.W.3d 211, 213 (1951). Under Missouri law, we apply the general rules of contract construction when interpreting settlement agreements. In re Marriage of Lueken, 267 S.W.3d 800, 803 (Mo. App. E.D. 2008). It is a question of law whether the contract is ambiguous. Id. To determine whether a contract is ambiguous, we consider the document in its entirety, looking at the natural and ordinary meaning of the language used. The test is whether the disputed language, in the context of the entire agreement, is reasonably susceptible to more than one construction. Id. The intent of the parties is crucial to construing the settlement agreement. Id. "We first examine the plain language of the agreement to determine whether it clearly addresses the issue at hand." Withers v. City of Lake St. Louis, 318 S.W.3d 256, 261 (Mo. App. E.D. 2010).

Here, the settlement agreement provided that Husband shall pay Wife $1,850 per month in non-modifiable maintenance on the 19th of each month, until such time as Husband has retired and Wife is receiving her portion of Husband's pension from Ameren. The settlement agreement specifically stated that "[w]hen [Wife] is receiving her portion of Husband's retirement upon the first payment by the retirement account to [Wife] then the maintenance obligation shall cease." The settlement agreement further provided that "[a]ny pension payments made to [Wife] within 30 days of the last

8

maintenance payment shall be reimbursed to [Husband] on a prorated basis of $61.67 per day."

Husband argues that the unambiguous intent of the settlement agreement was for him to be reimbursed for pension payments to Wife duplicating his maintenance payments to Wife. Wife responds that under the terms of the settlement agreement, Husband could only be reimbursed for any pension payments made within 30 days of the last maintenance payment.[2]

Looking at the plain language of the settlement agreement, the clear intent is that Wife is not to receive both maintenance payments and pension payments at the same time. The settlement agreement plainly states that maintenance shall continue until Wife receives her portion of Husband's pension payments and that any pension payments made to Wife within 30 days of Husband's last maintenance payment shall be reimbursed to Husband. The settlement agreement did not place a limit on the number of days of reimbursement, but rather stated that "any pension payments" made to Wife within 30 days of the last maintenance "shall" be reimbursed. Here, Husband paid maintenance payments on the 19th of each month through October of 2012, and on November 1, 2012, Ameren sent Wife a lump-sum payment covering the payment period between January 1 and November 1, 2012. This lump-sum pension payment was made within 30 days of Husband's last maintenance payment, and thus under the terms of the settlement

---

[2] Wife's argument that Husband's motion to determine amounts due was barred by res judicata is unavailing. Although Wife is correct that the trial court previously set aside its order ordering a calculation of what reimbursement, if any, was owed to Husband under the settlement agreement, the record does not reveal the basis for the court's decision. Wife had requested the order be set aside on numerous grounds unrelated to the arguments raised in Husband's later motion to determine amounts due. Based on this record, we cannot determine that the trial court previously heard and denied the same cause of action raised in the motion to determine amounts due.

9

agreement, Husband was entitled to a reimbursement of the pension payment on a prorated basis of $61.67 per day.

Reading the plain language of the settlement agreement, it is not susceptible to more than one interpretation and must be enforced according to its plain and unambiguous terms. In re Marriage of Lueken, 267 S.W.3d at 803; see also Withers, 318 S.W.3d at 261. Accordingly, we find the trial court erred in denying Husband's motion to determine amounts due under the settlement agreement.

Point granted.

## Conclusion

The judgment of the trial court granting summary judgment to Husband is affirmed, but the trial court's judgment denying Husband's motion to determine amounts due is reversed and remanded for calculation in accordance with this opinion.

Gary M. Gaertner, Jr., Judge

Lisa S. Van Amburg, P. J., concurs.
Patricia L. Cohen, J., concurs.

10