

# In the Missouri Court of Appeals Eastern District

<u>DIVISION THREE</u>

| | | |
|---|---|---|
| STEVEN R. FINLEY, et al., | ) | No. ED111296 |
| | ) | |
| Respondents, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| | ) | |
| v. | ) | Cause Nos. 18SL-PR01711, |
| | ) | 18SL-CC03183 |
| | ) | and 18SL-CC03183-01 |
| | ) | |
| KAREN I. FINLEY, et al., | ) | Honorable Ellen Sue Levy |
| | ) | |
| Appellants. | ) | Filed: January 30, 2024 |

<u>Introduction</u>

This case involves an appeal from the trial court's enforcement of a settlement agreement between the parties, who are brother and sister, concerning administration of their mother's trust. The trial court found one paragraph of the settlement agreement ambiguous because it required a cash distribution to Respondent Steven R. Finley (Steven[1]) equal to one half of the value of their mother's residence in consideration for that house being distributed to Appellant Karen I. Finley (Karen), but did not explicitly state whether such distribution was to be made from the trust or from Karen personally. The trial court concluded that the parties intended to equally distribute the trust assets and thus the

---

[1] Because the parties share a last name, we use their first names in this opinion for the sake of clarity. We intend no disrespect in doing so.

payment should have come from Karen personally. Karen argues the trial court erred in finding an ambiguity in the term of art "cash distribution," utilizing parol evidence and equitable principles to require an equalizing payment to come from Karen personally, and ordering Karen to pay attorney's fees. Because we find the settlement agreement unambiguously provided the cash distribution was to come from the trust, and in the absence of any evidence of fraud or mistake, we conclude the language of the agreement governs. We must therefore reverse.

Background

Karen and Steven are the children of Susan M. Finley and the sole beneficiaries of the Susan M. Finley Living Trust (Trust), of which Karen is the trustee. The Trust provided for equal distribution of assets between Karen and Steven upon their mother's death after payment of expenses, and the Trust allowed Karen to continue living in their mother's home (the Hargrove House), during the administration of the Trust and distribution of Trust assets. On May 23, 2018, Steven filed an action alleging that Karen had breached her fiduciary duties in administering the Trust and unjustly enriched herself by delaying administration of the Trust while she resided at Hargrove House. He sought to remove her as Trustee and to be appointed as successor trustee, compensatory and punitive damages, attorney's fees, an accounting, and an order compelling Karen to properly administer the trust. In October of 2018, Karen filed an action against Steven and his wife, Cynthia Finley, for breach of contract and conversion, alleging they had borrowed and failed to repay at least $88,800 from the Trust and she could not by law distribute Trust assets to Steven until he either repaid the debt or agreed to a setoff.

2

The trial court consolidated these cases, and on January 7, 2019, Karen and Steven executed and filed a Memorandum of Understanding with the court, purporting to settle all issues regarding the Trust. On February 19, 2019, the parties amended the Memorandum of Understanding to reflect a change in circumstances regarding the sale price of one of the Trust properties (the Scott County Farm). The amended Memorandum of Understanding (MOU) canceled the pending trial date and stated, "except as amended hereby," the MOU was "to remain in full force and effect." The MOU was filed as an order and signed by the trial court.

As relevant to this appeal, the MOU required the following. Paragraph 1 required the "Hargrove House to be distributed to Karen at the value of $335,000.00 . . . ." Paragraph 2 addressed the sale of the Scott County Farm. The amended MOU changed the sale price to $294,000.00, which was $14,000.00 less than originally contemplated by the parties. They agreed in the amended MOU that Karen as Trustee would withhold $14,000.00 from the sale proceeds pending resolution of the allocation of such amount, which the parties reserved for determination at a later date.

Paragraph 4 of the MOU provided that all of Steven's debt pled by Karen in her suit would be "compromised to the amount of $20,000.00 due the estate and shall be distributed to Steve[n]." Paragraph 8 granted Karen an "additional distribution of cash of $45,000.00 in lieu of all trustee & attorney fees." Paragraph 8 further stated, "Karen shall not receive additional fees." Paragraph 9 provided for a "cash distribution to Steve[n] of $167,500.00 in consideration of the distribution of Hargrove House to Karen to be made within 14 days after closing sale of Scott County Farm." Finally, paragraph 12 provided

3

that "all of Trustee's legal fees and expenses and all court costs here, publication expenses, and other expenses of litigation shall be paid by the Trust."

The sale of the Scott County Farm closed on March 28, 2019. Following the sale, Karen, as Trustee, made a cash distribution of $167,500 to Steven from the Trust on April 5, 2019, and executed a Trustee's Special Warranty Deed transferring the Hargrove House from the Trust to Karen individually on April 17, 2019. Karen, as Trustee, also distributed $75,000 from the Trust each to Karen individually and to Steven on April 9, 2019.

Thereafter, Steven and Karen filed multiple motions alleging, among other things, the other had failed to follow the terms of the settlement agreement and requesting attorney's fees, sanctions, and other relief. The trial court conducted an evidentiary hearing, after which it entered a judgment on February 4, 2020, and later an amended judgment on May 27, 2020.

As relevant to this appeal, the trial court's amended judgment found that Paragraph 9 of the MOU, which provided for a "cash distribution to Steve[n] of $167,500.00 in consideration of the distribution of Hargrove House to Karen to be made within 14 days after closing sale of Scott County Farm," was ambiguous in that it did not specify the source of the $167,500.00 payment. The court noted that making the distribution from the Trust resulted in Steven essentially paying half of that amount to himself, while Karen received the entire Hargrove House, valued at $335,000.00, the result being that Steven was compensated for only one-fourth of the value of the Hargrove House, rather than half. The court found it implausible that Steven would have agreed to such an arrangement, noting his testimony that "his intent and only objective was to be treated equally." The court found such testimony "consistent with the parties' intent that unless otherwise specifically

4

indicated (as in the distribution of Steven's debt to only his trust share) the trust assets were intended to be distributed equally to parties, which was consistent with the terms of . . . the Trust." The trial court therefore found that Karen owed Steven an equalizing distribution of $83,750.00 from her share of the Trust or her personal funds. The trial court further found that Karen's outstanding legal fees as Trustee must be paid by the Trust pursuant to Paragraph 12 of the MOU. Finally, the court declined to sanction either party at that time.

On May 25, 2021, the trial court ordered that the $14,000.00 withheld from the sale proceeds of the Scott County Farm be split equally between Steven and Karen, pursuant to an agreement they had reached. The trial court also denied a motion for contempt filed by Steven and Karen's motion to vacate or modify its amended judgment.

Karen then appealed to this Court, which dismissed her appeal, finding the case lacked a final judgment due to pending underlying claims in the trial court. Finley v. Finley, 642 S.W.3d 755 (Mo. App. E.D. 2022). The parties had agreed to voluntarily dismiss the claims they had filed prior to executing the MOU, but Steven's claims had not yet been dismissed.

On April 18, 2022, Karen filed a motion to enter final judgment by dismissing Steven's petition. On May 13, 2022, Steven filed a motion for attorney's fees and sanctions. After a hearing, the trial court found that Karen had utilized Trust funds to pay attorney's fees associated with protecting her individual interest in $83,750.00, which the trial court had ordered her to pay Steven as an equalization payment in its May 27, 2020 judgment. The trial court therefore ordered Karen to pay $12,300.00 from her share of the Trust or her personal funds to Steven. The court further granted Karen's motion to dismiss Steven's underlying petition, resulting in a final judgment. This appeal follows.

5

Karen raises six points on appeal. In Point I, she argues that the trial court erred in enforcing the MOU because Steven did not file a motion to enforce the settlement agreement, but rather his motions sought enforcement of the Trust. Points II through V attack the trial court's finding that Paragraph 9 of the MOU was ambiguous and its reliance on equitable principles and extrinsic evidence to order Karen to make an equalization payment from her Trust share or personal funds. In Point VI, Karen argues that the trial court erred in ordering her to pay Steven $12,300 in attorney's fees because such an order is not authorized by the MOU, and provisions of the Missouri Trust Code providing for an award of attorney's fees do not apply due to the parties' resolution of this dispute by settlement agreement. We address each argument in turn.

## Standard of Review

We review a judgment in a court-tried case according to the principles set forth in Murphy v. Caron, 536 S.W.2d 30 (Mo. banc 1976). We will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Id. at 32. However, we review issues of law, including the interpretation of a contract, *de novo*. Ebert v. Ebert, 627 S.W.3d 571, 579 (Mo. App. E.D. 2021) (citing Woodson v. Bank of Am., N.A., 602 S.W.3d 316, 323 (Mo. App. E.D. 2020)).

## Point I

Karen argues that the trial court erred in enforcing the MOU because it was outside the scope of the motions Steven filed, resulting in a potential denial of due process to Karen. Steven responds that Karen has waived this argument by failing to raise it in her motion

for new trial following the trial court's amended judgment of May 27, 2020. We disagree with both arguments.

First, Rule 78.07(b)[2] provides, "[e]xcept as otherwise provided in Rule 78.07(c) [regarding allegations of error relating to the form or language of the judgment], in cases tried without a jury . . ., neither a motion for new trial nor a motion to amend the judgment or opinion is necessary to preserve any matter for appellate review if the matter was previously presented to the trial court." Here, Karen raised her argument that the trial court's judgment exceeds the scope of Steven's motions in her first motion to vacate or for new trial following the trial court's February 4, 2020 judgment. The trial court clearly did not find it persuasive given that the court in its amended judgment on May 27, 2020 also enforced the MOU. Thus, the issue was previously presented to the trial court, and Karen did not waive this argument for purposes of this appeal by failing to raise it a second time after the trial court's amended judgment.

However, we do not find her argument successful on the merits. She argues that the trial court's amended judgment exceeds the scope of Steven's motions because he did not request that the court enforce the MOU, and his motions instead appealed to equitable principles and the Trust language. "Missouri does not have a specific 'process for enforcing an agreement settling a pending case.'" Eaton v. Malinkrodt, 224 S.W.3d 596, 599 (Mo. banc 2007) (quoting Barton v. Snellson, 735 S.W.2d 160, 161 (Mo. App. E.D. 1987)). "Settlement may be raised as an affirmative defense or . . . via a motion to enforce the settlement agreement." Id.

---

[2] All rule references are to Mo. R. Civ. P. 2018 unless otherwise indicated.

Here, Karen is correct that Steven did not file a motion to enforce the MOU. Multiple motions were in front of the trial court when it entered judgment, including a motion for sanctions, equitable relief, and accounting Steven filed on April 25, 2019; a counter-motion for sanctions and attorney's fees filed by Karen on May 24, 2019; a motion for accounting, equitable relief, appointment of a special fiduciary, and sanctions filed by Steven on July 28, 2019; and a counter-motion to sanction Steven for breaches of the settlement agreement filed by Karen on July 3, 2019. Steven argues that the substance of his motions appealed to the MOU and that Karen asserted the MOU as a defense in her motions, thus enforcement of the MOU was properly before the trial court. We agree.

"A pleading is judged by its subject matter—not its caption." Worley v. Worley, 19 S.W.3d 127, 129 (Mo. banc 2000). Here, Steven's April 25, 2019 motion repeatedly referenced the trial court's February 19, 2019 order, which consisted of the amended MOU. The order stated that the MOU's terms were "in full force and effect." Steven alleged Karen failed to comply with that order, hence the MOU, in multiple respects. Karen's responses to Steven's factual allegations referenced several specific paragraphs of the MOU and sought to show how Karen had actually complied with the MOU. Where Steven appealed to the terms of the Trust or equitable principles, Karen responded that he misunderstood the terms of the MOU and that the MOU governed. Moreover, she characterized herself as "the prevailing party on *the main issue in dispute here* (whether she ha[d] violated the settlement agreement)" (emphasis added). Karen's final motion filed before judgment was denominated, "COUNTER MOTION TO SANCTION [Steven] FOR BREACHES OF SETTLEMENT AGREEMENT." Both Steven's and Karen's pleadings adequately raised the issue despite not being clearly labeled as either a motion to enforce

8

the settlement agreement or an affirmative defense. The trial court was familiar with the MOU given it had previously entered two orders memorializing the agreement.

Further, even had the pleadings not raised the issue, Karen testified at the evidentiary hearing regarding the details of the MOU, including how she and Steven arrived at particular provisions such as the values of the Hargrove House, Steven's debt, and her Trustee fees. She explained the distributions she made as Trustee according to the terms of the MOU. Given the foregoing, she cannot now argue that she was denied due process because Steven failed to file a specific motion to enforce the settlement agreement. See Smith v. City of St. Louis, 395 S.W.3d 20, 25 (Mo. banc 2013) (issues not raised in pleadings may be tried by implied consent). Point denied.

### Point II

Karen argues that the trial court erred in finding Paragraph 9 of the MOU ambiguous because the language unambiguously requires a cash distribution of $167.500.00 to Steven from the Trust. We agree.

Missouri courts apply normal rules of contract construction to the interpretation of settlement agreements. In re Marriage of Lueken, 267 S.W.3d 800, 803 (Mo. App. E.D. 2008). We consider the whole instrument in determining whether a particular provision is ambiguous, and the fact that the parties disagree regarding its meaning does not automatically render a provision ambiguous. Id. "The test is whether the disputed language, in the context of the entire agreement, is reasonably susceptible of more than one construction . . . ." Id. The court's role is to determine the intent of the parties from the four corners of the document rather than what the parties now say they intended, resorting to extrinsic evidence only where the language is ambiguous. Id.

9

Here, the disputed language of Paragraph 9 is set amid multiple provisions of the MOU, and each reference to a "distribution" concerns the transfer of a Trust asset from the Trust to either Karen or Steven:

1. Hargrove House to be **distributed** to Karen at the value of $335,000.00 . . .
2. [as amended] Scott County Farm to be sold to [buyer] for $294,000.00. . . . Karen shall withhold $14,000.00 from other funds subject to **distribution** pending resolution of allocation of said amount . . . .
3. Franklin County Property shall be **distributed** to Karen and Steve[n] equally as tenants in common.
4. All debt pled in [Karen's suit] are compromised to the amount of $20,000.00 due the estate and shall be **distributed** to Steve[n].
5. IRAs will be **distributed** equally to Karen and Steve[n] (one half of each to each). . . .
6. Remaining Enterprise Bank Account will be divided equally and **distributed** to Karen and Steve[n] after all other costs and expenses and **distributions** are made.
7. Karen will **distribute** the following personal property to Steve[n]: . . .
8. Karen shall receive additional **distribution** of cash of $45,000.00 in lieu of all trustee and attorney fees. Karen shall not receive additional fees.
9. Cash **distribution** to Steve[n] of $167,500.00 in consideration of **distribution** of Hargrove House to Karen, to be made within 14 days after closing sale of Scott County Farm.
. . .
13. Scott County Farm sale proceeds to be **distributed** to beneficiaries within 15 days after sale.

(emphasis added). To read one of the two distributions called for in Paragraph 9 as a payment from Karen's personal funds or her Trust share rather than from the Trust as a whole would be to single it out as an anomaly in the entire document, which is not called for by the language of the MOU. The fact that it is a "cash distribution" does not merit a different interpretation, given that Paragraph 8 also calls for a "distribution of cash" for Karen's trustee and attorney's fees, which no doubt the parties intended to come from the

10

Trust. There simply is no reasonable alternative way to interpret the distribution language in Paragraph 9.

The trial court instead focused on Paragraph 9's statement that the distribution is "in consideration of distribution of Hargrove House to Karen," reading it in isolation with Paragraph 1's distribution of the Hargrove House. The trial court referred to the terms of the Trust, which called for equal distribution of Trust assets, as well as to Steven's testimony that he wanted to be treated equally, to conclude that the intent of the MOU could not be that Steven's consideration in exchange for the asset allocated to Karen would be less than equal to its value. However, the trial court erred in considering this evidence. The parties entered the MOU to resolve all of their disputes concerning the Trust. Thus, the language of the MOU controls over any provision of the Trust, and the parties were free to bargain away their bequests granted by the Trust in order to settle their many disputes in this matter.

Additionally, Steven's statements regarding his intent are excluded by the unambiguous language of the agreement. It is undisputed that the parties' attorneys drafted this agreement in the presence of the parties, at the courthouse. Had they intended for the assets to be split equally, these sophisticated drafters could have simply designated a $335,000 cash distribution from the Trust to Steven—equal to what the parties determined was the value of the Hargrove House. Alternatively, they could have specified that Steven's one-half interest in the value of the house come from Karen's Trust share or from her personally. They did neither. Because the agreement is unambiguous, our analysis ends there.

However, even were we to consider the degree of equity reached here, in light of the MOU as a whole, it is not clear that its results are inequitable. The agreement itself says in Paragraph 4 that Steven's debts were "compromised" to the amount of $20,000.00, indicating the amount was reduced in Steven's favor. The provision limiting Karen's trustee fees to $45,000.00 despite the ongoing requirements for her to administer and distribute the Trust assets indicates she accepted a lesser rate.[3] Though the distribution of the Hargrove House appears in Paragraph 1, the cash distribution to Steven as consideration does not appear until Paragraph 9, after mention of the Scott County Farm sale and adjustments to Steven's debt and Karen's fees, suggesting that all of these provisions are to be read together and taken into account by the time Paragraph 9 sets the consideration. Further, we cannot quantify the value each party placed on ending the dispute without protracted litigation. Thus, read as a whole, the MOU does not present as clearly inequitable.

Regardless, there is simply no statement in the MOU that the parties intended to receive equal amounts across the board. As stated above, any appeal to the Trust language is improper given the existence of the MOU. Nor is it for the trial court to determine whether the value of consideration in a contract was adequate; it needs only to be present. Baker v. Bristol Care, Inc., 450 S.W.3d 770, 781 (Mo. banc 2014) ("Courts have no authority to attempt to value the bargained-for consideration in an effort to determine whether the promisor is—or is not—receiving 'adequate' return for the promise given"). Here, consideration is present, is not necessarily inequitable in light of the whole

---

[3] And were we to consider extrinsic evidence, as the trial court did, there was evidence that several provisions of the MOU benefitted Steven, including a reduction of his debt from $92,800.00 to $20,000.00, inflated valuation of the Hargrove House from $298,000.00 to $335,000.00, and a limitation on Karen's fees to $45,000.00, when if calculated hourly would have been in excess of $150,000.00.

agreement, and the provision for the cash distribution to Steven is unambiguous that it was to be made from the Trust.  Point granted.

## Points III, IV, and V

Karen argues in these points that the trial court erred in concluding that the MOU required equal distribution of Trust assets (Point III), made a factual finding that the parties intended the distribution in Paragraph 9 to come from Karen personally that was against the weight of the evidence (Point IV), and erred in utilizing equitable principles to order Karen to make an equalization payment of $83,750.00 (Point V).  In light of our decision in Point II, we deny Points III, IV, and V as moot.

## Point VI

In Point VI, Karen argues the trial court erred in ordering her to pay $12,300 in attorney's fees to Steven.  The trial court found that Karen had utilized those fees paid by the Trust to defend her individual interest in the $83,750.00 that the court ordered her to pay Steven, and as such, it was an improper use of Trust funds.  Karen argues the trial court was not authorized to make an award of fees under Section 456.10-1004,[4] which grants courts discretion to award reasonable fees in cases involving the administration of trusts, because the MOU governs the payment of fees and directed that all of Karen's attorney's fees as Trustee were to be paid by the Trust.  We disagree with Karen's argument regarding the applicability of Section 456.10-1004, but in light of our analysis of Point II, we agree that the trial court's specific order of attorney's fees here must be reversed.

Section 456.10-1004 provides, "In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and

---

[4] All statutory references are to RSMo. Supp. 2004, unless otherwise indicated.

13

expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy." Karen argues that in light of the MOU, the present action concerns a contract, rather than the administration of a trust, thus Section 456.10-1004 is inapplicable. We disagree.

Section 456.10-1004 utilizes broad language, encompassing any "judicial proceeding involving the administration of a trust," rather than limiting it to the type of claim raised, or even to proceedings only in probate court. See O'Riley v. U.S. Bank, N.A., 412 S.W.3d 400, 419 (Mo. App. W.D. 2013) (noting Section 456.10-1004 applies to requests for attorney's fees incurred on appeal of a case involving administration of a trust). The subject of the settlement agreement here is the administration of the Trust, and all of the MOU's provisions direct the Trustee in administering the Trust. Section 456.10-1004 applies here. Cf. Peppers Cemetery Foundation v. McKinney, 455 S.W.3d 465 (Mo. App. S.D. 2015) (analyzing trial court's award of additional attorney's fees under Section 456.10-1004 in trust case involving a settlement that contained provision for award of attorney's fees).

Our conclusion that Section 456.10-1004 applies here does not invalidate Paragraph 12 of the MOU, which states, "All of Trustee's legal fees and expenses . . . shall be paid by the Trust." This provision designates the payment of *Trustee's* legal expenses, but says nothing about any expenses Karen may incur in her individual capacity. The trial court had discretion to delineate such expenses and make an award accordingly as justice and equity required. However, this particular award of $12,300 in fees was based on the trial court's finding that Karen improperly expended them to protect her individual interest in $83,750.00, which the court determined was not rightfully hers. As we have found the

14

trial court erroneously interpreted the MOU in this regard, the trial court's reliance on its interpretation in this award of fees is misplaced. Thus, we reverse the trial court's award in this respect. Point granted in part.

## Conclusion

Paragraph 9 of the MOU unambiguously required the cash distribution of $167,500.00 to Steven to be made from the Trust. Thus, Karen as Trustee complied with the terms of the MOU when she made such distribution, and no equalization payment was required. Additionally, while the trial court had discretion pursuant to Section 456.10-1004 to award attorney's fees not assigned by the MOU, in light of our conclusion that Paragraph 9 of the MOU is unambiguous, the trial court's order of $12,300 in attorney's fees expended in defending Karen's performance as Trustee of her obligations pursuant to the MOU in this respect is misplaced. Accordingly, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

_____
Gary M. Gaertner, Jr., J.

Lisa P. Page, P.J., and
Angela T. Quigless, J., concur.

15